The last case on today's docket is the case of people of the same vote of mine v. Roger Campbell, and we have the appellee of the Wade argument, and Mr. Richard Whitney here for the appellate. Good afternoon, your honors, and may it please the court. On this appeal, we are asking the court to reverse a trial court's order denying Mr. Campbell's motion to suppress the evidence obtained after a traffic stop, where the police officer did not have any reasonable, articulable suspicion to believe that Mr. Campbell had committed an offense when he pulled him over. Because the officer, Trooper Pappas, did not have any independent recollection of the driving conduct that he says prompted the stop, the sole factual basis for the stop appears in the DVD video recording of Mr. Campbell's driving. Therefore, the trial court was not in a superior position to view the evidence, and this court is not bound by the trial court's findings. In other words, you may review the record and the trial court's ruling de novo. Well, I know the other party's not represented, but I'm going to be the double advocate and ask you how you distinguish this case from Haines, Hines, or North Carolina. Yeah, the Hines v. North Carolina, certainly, your honor. And that was the case that I brought to this court's attention as an officer of the court, even though it is... And we appreciate that when that happens. Understandably. Thank you for asking the question. In Hines, the U.S. Supreme Court held that the reasonable suspicion that a motorist has committed an offense needed to justify a traffic stop can rest on an objectively reasonable mistaken understanding of the scope of a legal prohibition. Now, this admittedly does eliminate a small part of our argument where I cited the people be cold, which held to the contrary. But it doesn't change the fact that in this case, Trooper Pappas did not have a reasonable articulable suspicion to believe that Mr. Campbell had committed an offense. One of the things that really stands out in the Hines case is that it's creating a very narrow exception, and the concurring opinion spoke to that in even greater detail. The statute in question in Hines was extraordinarily confusing. It referred to basically that the fact pattern there was the officer stopped someone because he only had one working brake light, and he thought that you needed two. The statute in North Carolina actually refers to a stop lamp. You have to have at least one. But it was very confusing because another part of the statute referred to rear lamps, suggesting that you had to have two rear lamps working, and there was even another subsection of the same provision that said all originally equipped rear lamps or the equivalent had to be in good working order. And so the court in Hines was creating a very narrow exception that it really has to be a reasonable mistake of law in order to allow the stop to be good under the Fourth Amendment. We don't have that here. We have here a case where in order to show a violation, someone has to not be driving as nearly as practicable within a single lane of traffic. But what does within a single lane of traffic mean if you touch one of the lines? Well, it means that... Fog. What is the fog line? Well, for a number of reasons, Your Honor, I think it is very clear that this is not a reasonable mistake of law. When you barely graze the line, which is what happened in this case, you have to cross over. For one thing... Didn't it happen more than once? I'm sorry? Didn't the touching of the line happen more than once? It occurred... Yeah. When I looked at the video, I only saw three. Barely grazing the line, as he was going around a curve, he barely grazed the right side of the fog line as he was going around a right curve. But, number one, we have a case law. Almost 20 years ago, the Supreme Court of Smith held that when a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the statute. Now, granted, it didn't say, you know, that when it barely grazes the line, it's not violating the statute. But I think the implication of this in the Supreme Court's reading is you have to cross over. The same thing occurred in the Scott case decided by this Court not that long ago and the Hackett case, the more recent Supreme Court case. In every one of these cases, you crossed over the line, not barely touched it. There's an argument about Terry Scott, though, that there's reasonable suspicion that there may be indicia of some traffic offense. And here I think, and we haven't seen, I haven't seen the video yet, that there was a contention that he jerked back and forth. There was at one point in time. But again, Your Honor, this officer had no independent recollection. The only thing that matters here is the video. You don't see it on the video. But, I mean, he doesn't have to break the law necessarily under a Terry Scott argument. There have – well, I beg to differ, Your Honor. There has to be reasonable suspicion of some kind of offense. Now, the reasonable suspicion might be of impaired driving in some way, and that's why if there was an observation of erratic driving. Well, I thought that that's perhaps what was being contended when they talked about swerving back and forth. Well, that's what the State argued for the first time on appeal. The State never argued that amendment court below. It's not on the videotape. Again, the tape will speak for itself. Right. But to my observation, there is nothing in Mr. Campbell's driving that is outside the normal parameters of driving, that one observes every day going down the nation's highways. Frankly, typically we see far worse than that. But that's another matter. Also, Your Honor, there's other reasons why we should find that this was not a reasonable mistake and that merely grazing a fog line is not enough. One is that in contrast to the confusing statutory scheme in the Heim case, in this case it's not confusing. As a matter of fact, as I point out in the reply brief, there's the companion statute that defines roadway, and it says, which is part of the statute that Mr. Campbell was accused of having violated, and that defines roadway as that portion of a highway improved, designed, or ordinarily used for vehicular traffic exclusive of the berm or shoulder. Well, that means that unless you're on the berm or shoulder, in other words, having crossed the fog line, then you're still on the road. You're still on the lane in the road. So here the companion statute actually helps make clear you're not violating unless you go outside of the lane. There's also kind of a common sense English usage. If the statute says you have to be within the lane, well, to not be within you have to be without, which means you have to cross it, right? There's also public policy concerns here. From a common sense standpoint of a reasonable police officer observing driving behavior, if near touching the fog line were considered a violation, there would be an exponential expansion in the universe of violators. And, again, I would call your attention to common experience observing everyday driving behavior. And I did cite, I think particularly trenchant was the observation of the Tenth Circuit Federal Court in the Lyons case where it said if failure to follow a perfect vector down a highway was a sufficient reason to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy. What year was that written? That was in 93. Pre-texting or not? I'm sorry? Pre-texting or not? 93. So, yeah, probably pre-testing. But, again, in this case, and I know the state in the Apple East brief did say, well, there were other grounds because it said that, well, he was weaving and so on. Again, it's not in the video. He said there was testimony as to jerky, which was not in the video. There was one, yes, the officer testified at one point in the preliminary hearing, not in the motion of suppress hearing, that it observed jerking. And you couldn't see that in the video? No, you can't see it in the video. And later on, the officer said he didn't have any independent recollection. As a matter of fact, if we want to talk about weaving, I would call attention to the fact that the only weaving in this case was done by Trooper Pappas because first he said that Mr. Campbell's tires did cross the fog line. Then he said he couldn't remember if they crossed or touched it. And then later when the DVD was being played in court, he said either touched it or crossed it. So he was a little bit off in a place himself. If there are no other questions, thanks to the court for his time. Thank you, Mr. Whitney. And we will take another one. And this concludes today's docket. We will stand and recess until tomorrow at 9 o'clock. All rise.